UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                         :

NADALETTE NELSON,            :
                          :

                  Plaintiff,     :       11 Civ. 1182 (TPG)
                          :

           – against –       :      **<u>OPINION</u>**
                          :

PUBLISHERS CIRCULATION    :
FULFILLMENT, INC.,         :
                          :

                Defendant.   :
------------------------------------------------x

       Plaintiff Nadalette Nelson is suing defendant Publishers

Circulation Fulfillment, Inc. for a violation of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., as

well as asserting state law claims of negligence, fraud, negligent

misrepresentation, constructive fraud, breach of fiduciary duty, civil

conspiracy to commit fraud, aiding and abetting fraud, and a claim

under New York General Business Law ("GBL") section 349.  Nelson

claims that Publishers wrongfully reported that she had earned income

at Publishers and sent fake paychecks to a third party, after Nelson no

longer worked for Publishers, and that her signature was forged on the

fake paychecks.  Nelson alleges that she has received letters from the

Internal Revenue Service ("IRS") asserting that she owes income taxes

based on her receipt of such paychecks and that Publishers also

disclosed confidential information about her to third parties.  Publishers

moves to dismiss the entire complaint for failure to state a claim.

The motion to dismiss is granted.

## THE COMPLAINT

The following facts are drawn from the complaint and are assumed to be true for purposes of this motion.

<u>The Parties</u>

Nelson is a former employee of Publishers.  She lives in New York.

Publishers is a corporation organized under the laws of Maryland, with its principal place of business in Maryland.  It is the largest newspaper home delivery distributor in the United States.  It delivers approximately 11 million newspapers each week.

<u>The Dispute</u>

Nelson successfully applied for a job with Publishers around 2006. She filled out an employment application, which she alleges included certain "personal and confidential biographical information," including her Social Security Number, date of birth, address, and home phone number.  She claims that Publishers "assumed a duty not to disseminate in any way and to protect closely such private and confidential biographical information" through "express and implied promises." Nelson claims she was lured to work for Publishers by promises on its website, such as "[y]ou'll be rewarded" and that she could rely on the "safety and protection," and the flexible benefits, afforded to Publishers' "team."  However, she claims that in actuality, Publishers' goal was not to provide "safety and protection" for her, but to steal her private and

confidential information so that Publishers could disclose that information by drafting checks in her name after she left.

While Nelson was employed by Publishers, Publishers mailed Nelson's payroll check to her apartment in Brooklyn, New York. Although the details of Nelson's employment are not clear from the complaint, it appears that she is alleging that she was an at-will employee of Publishers.  Later in 2006, Nelson resigned from Publishers and took a job with Future Care Health Services, Inc.  Nelson alleges that after her resignation from Publishers, Publishers either intentionally or negligently continued to create payroll checks payable to her and mailed them to an address that did not belong to her and where she had never lived.  Nelson claims that Publishers mailed the checks to another address so that an unknown third party could receive the checks, forge her signature, and cash the checks.  She has explained that the forged signatures on the checks are noticeably different from her natural signature, and that she did not receive or cash such checks.

According to Nelson, Publishers' promises that it would keep her confidential information secret and the representations on Publishers' website were made with the goal of making Nelson responsible for taxes in the future based on the fake payroll checks.  She claims that fifty such false checks have been cashed in her name between her resignation in 2006 and 2009.  Nelson has provided the values of three of those checks, which were for $633.29, $594.91, and $653.53.

In June 2010, Nelson received two notices from the IRS accusing her of failing to declare on her tax return income allegedly generated from her employment with Publishers.  Nelson claims that these IRS notices are the result of income falsely attributed to her by Publishers. Nelson requested that Publishers notify the IRS that Nelson did not work for Publishers during the time in question, but Nelson alleges that Publishers did not do so.  Nelson claims that she has been exposed to "massive civil and criminal liability and penalties," but notes that the "full impact and total ramifications of these acts cannot be fully known or completely understood for many years to come."  She does not allege that she has been made to pay on any tax liability to the IRS.

Nelson's Claims

Claim 1 is for a violation of RICO.  Nelson claims that Publishers' conduct included the violation of many different federal statutes, including statutes prohibiting identity theft and identity fraud, tax fraud, mail fraud, wire fraud, bank fraud, forgery, obstruction of justice related to state gambling laws, extortion, and grand larceny.  Nelson also claims that Publishers' violated New York Penal Law sections 175.35 and 175.40.  As a result of Publishers' conduct, Nelson seeks damages to remedy "terrible mental anguish" she suffered, which has caused her physical pain, inability to sleep, and inability to participate in her daily activities.  She seeks $1.5 million in lost income to compensate her for her inability to "provide services in interstate commerce for the next 30

years," $5 million to compensate for physical and psychological rehabilitation and treatment, and $10 million in damages for the RICO claim, which she alleges should be trebled pursuant to the RICO statute, along with punitive damages.

Nelson also asserts seven tort claims under New York law over which this court has diversity jurisdiction based on Nelson's New York citizenship and Publishers' Maryland citizenship.

Claim 2 is a claim for negligence.  Nelson alleges that Publishers breached a duty owed to Nelson by sending checks to Nelson when she was not employed by Nelson and failing to inquire whether she received mail at a different address, as well as failing to supervise its employees and agents that mailed such checks.

Claim 3 is a claim for breach of fiduciary duty.  Nelson contends that Publishers had a fiduciary duty to protect the confidentiality of private information she gave them and that it breached this duty by the alleged scheme described above.

Claim 4 is a fraud claim, which is based on allegedly false representations that Publishers made that it would protect her private and confidential biographical information.  Claim 5 is a claim for negligent misrepresentation and constructive fraud based on the same facts.

Claim 6 is a claim for "civil conspiracy to commit fraud."  Claim 7 is a claim for aiding and abetting fraud.  Although it is not clear from

Nelson's complaint, both of these claims apparently refer to the fact that Nelson claims Publishers conspired or worked with a third party to issue and cash false checks in her name.

Claim 8 is a claim for deceptive acts and trade practices in violation of New York GBL section 349, which prohibits false and misleading advertising directed towards consumers.

<u>The Present Motion</u>

Publishers moves to dismiss all of Nelson's claims for failure to state a claim. Nelson opposes such motion, but only actually argues that the RICO claim, negligence claim, and breach of fiduciary duty claims should survive dismissal.

**DISCUSSION**

<u>Claim 1: RICO</u>

Publishers claims that Nelson's RICO claim fails to adequately allege a pattern of racketeering activity and that Nelson has no standing to bring a RICO claim.

<u>Pattern of Racketeering Activity</u>

Nelson's complaint at various times alleges a violation of 18 U.S.C. §§ 1962(a) and (b). Both of these claims require that Nelson allege a pattern of racketeering activity. <u>See</u> 18 U.S.C. §§ 1962(a)-(b).

In order to show that a pattern of racketeering activity occurred, Nelson must show that multiple RICO predicate acts occurred, that those acts were related to each other, and that they "amount to, or that they

otherwise constitute a threat of, continuing racketeering activity." <u>H.J. Inc. v. N.W. Bell Tel. Co.</u>, 492 U.S. 229, 240 (1989). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a number of different potential predicate offenses.

Crimes Not Listed as Predicate Acts in the RICO Statute

Many of the statutes that Nelson claims Publishers violated are not listed in 18 U.S.C. § 1961(1). These statutes include the following: 18 U.S.C. § 491, 513, and 1028A; 26 U.S.C. §§ 7201 and 7203[1]; and NY Penal Law §§ 175.35 and 175.40. Publishers' alleged violation of these statutes is not a RICO predicate act.

Identity Fraud in Violation of 18 U.S.C. § 1028

Nelson also pleads that Publishers violated 18 U.S.C. § 1028, which punishes fraud related to false identification documents.

This statute proscribes eight distinct crimes related to the manufacture, use, possession, and trafficking of false identification documents. Nelson's complaint does not actually allege how she claims 18 U.S.C. § 1028 was violated or how the detailed requirements of this statute have been met; the allegation is purely conclusory and just indicates that the statute was violated. Certainly the complaint does not allege that Publishers created or used a false identification document

---

[1] The complaint actually refers to 18 U.S.C. §§ 7201 and 7203, but it is apparent from the context of the complaint that Nelson was attempting to invoke 26 U.S.C. § 7201 and § 7203, which deal with tax evasion and failure to file tax returns, respectively. None of these statutes appear on the list of predicate acts in 18 U.S.C. § 1961(1).

containing Nelson's identity, or anything close to that type of conduct. Therefore, Nelson has not sufficiently pleaded that Publishers violated 18 U.S.C. § 1028.

Mail and Wire Fraud under 18 U.S.C. §§ 1341 and 1343

Nelson also claims that Publishers committed mail and wire fraud as RICO predicate acts.

To be guilty of mail or wire fraud, Nelson must plead "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000). A scheme to defraud must demonstrate a fraudulent intent. Id. at 116. A court may dismiss a mail or wire fraud claim where the alleged scheme to defraud does not demonstrate fraudulent intent because it defies logic or economic reason. Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc., 777 F. Supp. 228, 229 (S.D.N.Y.1991) (citing Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990)).

Here, Nelson's complaint fails to plead a claim for mail and wire fraud because it fails to plead a plausible scheme to defraud. Even affording Nelson all reasonable inferences in her favor, it defies economic reason to suggest that Publishers would have committed a scheme to defraud Nelson by intentionally inducing her to join Publishers, so that after she voluntarily resigned, Publishers could then mail false paychecks in Nelson's name to a third party and have those paychecks

cashed by third parties.  It is not clear how this alleged scheme could ever be a means of somehow defrauding Nelson.  It certainly would not help Publishers obtain money or property, whether from Nelson or from anybody else.  Rather, this alleged scheme seems to hurt Publishers more than anybody else by having Publishers pay compensation for services that were never rendered.

Nelson's mail and wire fraud claims are also deficient because she does not plead that Publishers made any actionable misstatements to her.  Not all statements may form the basis of a fraud claim.  Under both New York common law and the federal mail and wire fraud statutes, "opinions  and puffery or ultimately unfulfilled promises" are not actionable as fraud.  Jacobs v. Lewis, 689 N.Y.S.2d 468 (1st Dep't 1999); Lasker v. New York State Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir. 1996); Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994).  Similarly, a breached promise may not form the basis of a fraud claim unless the defendant "never intended to honor the contract." United States v. D'Amato, 39 F.3d 1249, 1261 (2d Cir. 1994); Braddock v. Braddock, 871 N.Y.S.2d 68, 72 (1st Dep't 2009).

It is apparent from the complaint that Publishers did not make any statements to Nelson when it allegedly sent the false paychecks to a third party.  Nelson did not receive those paychecks.  With respect to the wire fraud claim, it is based on representations about Publishers' benefits, which appeared on Publishers' website, in which Publishers claimed that

its employees would, inter alia, be "rewarded," enjoy "safety and protection," and be a "team."  Fraud claims may not be based on such non-actionable puffery, opinions, or promises.  See Lasker, 85 F.3d at 59; Cohen, 25 F.3d at 1172; D'Amato, 39 F.3d at 1261.  Nelson also argues that Publishes expressly or impliedly promised her it would safeguard her confidential information.  However, Nelson has not pleaded any of the facts necessary to support treating such a promise as an actionable representation of fact.  See D'Amato, 39 F.3d at 1261 (requiring a showing that the defendant "never intended to honor the contract").

Bank Fraud under 18 U.S.C. § 1344

Nelson also claims that Publishers engaged in predicate acts of bank fraud under 18 U.S.C. § 1344.

A claim for bank fraud requires a showing that Publishers "(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss."  United States v. Crisci, 273 F.3d 235, 239-40 (2d Cir. 2001).

Here, Nelson's complaint does not even name a financial institution, much less allege that Publishers had the intent to victimize an institution.  Nelson's bank fraud theory is not clear.  If her theory is that Publishers deceived a financial institution by having false checks cashed in Nelson's name, which could potentially deceive a financial

institution, there is no indication that Publishers had the intent to "victimize" any institution or expose it to any loss.  It is still Publishers who would be suffering a "loss" from allowing a third party to cash these forged fake paychecks, not any financial institution.  Moreover, this claim is also subject to dismissal because, for the reasons discussed above, like the mail and wire fraud claim, the scheme alleged defies economic logic.  See Saxony Heights Realty Assoc., 777 F. Supp. at 239 (dismissing mail, wire and bank fraud claims where alleged scheme to defraud defied economic logic).  The scheme that Nelson seems to be proposing is one where Publishers gives its money away to third parties with no corresponding benefit, and this is completely implausible and illogical. See id.  Therefore, bank fraud is not a valid predicate act.

### Obstruction of State Gambling Laws under 18 U.S.C. § 1511

Nelson has also asserted that Publishers violated 18 U.S.C. § 1511, which refers to obstruction of state laws with the intent to facilitate illegal gambling.  The complaint cannot possibly be construed to accuse Publishers of engaging in illegal gambling or covering up such illegal gambling.  This statute is irrelevant and Nelson cannot allege 18 U.S.C. § 1511 as a predicate act.

### Extortion under 18 U.S.C. § 1951

Nelson also refers to extortion, which is a potential RICO predicate act.

Under 18 U.S.C. § 1951, extortion requires "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Nelson has not pleaded that any of these requirements were met. The complaint cannot possibly be construed to involve Publisher obtaining property from anybody by force, violence, fear, or color of official right.

Nelson's complaint fails to sufficiently plead any predicate acts of racketeering. Therefore, Nelson's RICO claim is dismissed for failure to plead a pattern of racketeering.

RICO Standing

Publishers also argues that Nelson does not adequately plead an injury under RICO.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). A RICO plaintiff may recover for such injury to her business or property "only when his or her actual loss becomes clear and definite." Denny v. Deutsche Bank A.G., 443 F.3d 253, 266 (2d Cir. 2006) (quotations omitted). "RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries." Williams v. Dow Chem. Co., 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) (citations omitted).

Here, Nelson claims that she has suffered mental anguish, physical injury, and an inability to conduct her daily activities as a result

of defendants' alleged scheme.  These are not injuries to Nelson's

business or property and are not recoverable in a RICO action.  See id.

Nelson also argues that she may one day suffer tax liability and injury to

an unspecified business of hers as a result of her physical and emotional

injury.  The former allegation is based on the letters she received from

the IRS; the latter appears to be based on her allegation that she will be

unable to "provide services in interstate commerce" over the next thirty

years as a result of her physical and emotional condition.  These are

speculative injuries that have not yet been suffered, and may never be

suffered.  As such, any RICO claim is premature at this point.  Denny,

443 F.3d at 266 (holding that a RICO plaintiff may recover "only when

his or her actual loss becomes clear and definite"); Hecht v. Commerce

Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that alleged

loss of future commission too speculative an injury to support RICO

standing); Hunter v. Union Corp., No. C–93–2987, 1994 WL 1058668, at

*2 (N.D. Cal. Dec. 23, 1994) ("[P]otential future tax liabilities will not

suffice to show the requisite injury for a RICO claim.").

Nelson's RICO claim is dismissed because she does not have

standing to pursue a RICO claim.[2]

---

[2] In her opposition papers, Nelson also refers to an unpleaded claim for
conspiracy to commit a RICO violation.  RICO provides a separate cause
of action for conspiracy to commit a RICO violation.  See 18 USC 1962(d).
Any claim for a conspiracy to commit RICO violations must fail here
because "[d]ismissal of plaintiff's substantive RICO claim . . . mandates
dismissal of the conspiracy to commit RICO claim . . . as well." Purgess
v. Sharrock, 806 F. Supp. 1102, 1110 n. 9 (S.D.N.Y.1992).

Claim 2: Negligence

Publishers argues that Nelson's negligence claim should be dismissed because Nelson did not adequately allege a breach of duty.

Every negligence claim requires breach of a duty. Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232 (2001). "The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." Id. Courts "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." Id.

Here, Nelson contends that Publishers promised to keep certain of her personal information confidential, but that it nonetheless disseminated her confidential information when it sent false paychecks. Her negligence claim is thus dependent on a finding that Publishers owed her a duty not to disclose her private confidential information. Assuming the existence of such a duty, Nelson has not plausibly pleaded a breach of that duty. Nelson claims that the sending of false paychecks resulted in the disclosure of her personal confidential information. From Nelson's papers, which are admittedly difficult to follow, it appears she is

claiming that her Social Security Number was somehow disclosed to third parties when Publishers sent the false paychecks.  However, it is a matter of common knowledge – and Nelson admits as much in her papers – that paychecks do not contain one's Social Security Number. After admitting that it is "doubtless true" that her Social Security Number would not be on the paychecks, Nelson speculates in her opposition papers that her Social Security Number may have been disclosed in some other way, but she has not pleaded any facts plausibly supporting her claim that such a disclosure may have occurred. Nelson's pleading of a breach is purely conclusory – she pleads that Publishers "disseminat[ed] [her] private and confidential biographical information" – and it is insufficient to state a negligence claim.

     As another basis for finding a breach of duty, Nelson alleges that Publishers negligently hired and supervised its agents and employees, which resulted in Publishers or its agents sending false paychecks to a third party and disclosing Nelson's confidential information.  A claim for negligent hiring or supervision requires pleading that the "employer knew or should have known of the employee's propensity for the conduct which caused the injury."  Kenneth R. v. Roman Catholic Diocese, 654 N.Y.S.2d 791, 793 (2d Dep't 1997).  Nelson has made no such factual allegations to support the existence of this duty or a breach of this duty under the circumstances of this case.

Claim 3: Breach of Fiduciary Duty

Publishers argues this claim should be dismissed because it did not have a fiduciary duty to Nelson.

Under New York law, an employer does not have a fiduciary duty to his at-will employee.  See, e.g., Serow v. Xerox Corp., 560 N.Y.S.2d 575, 576 (4th Dep't 1990).  Nelson has not alleged or argued that she is anything other than a former at-will former employee of Publishers.

However, despite Serow and other cases holding that an employer owes no fiduciary duty to its at-will employees, in her papers Nelson suggests that there "should be" a fiduciary duty because she disclosed her confidential information to her employer.  Nelson has cited no authority in support of this argument.  It is true that in some circumstances, New York courts have imposed on businesses a duty to keep confidential the information of its customers or clients.  See, e.g., Anonymous v. CVS Corp., 728 N.Y.S.2d 333, 338 (N.Y. Sup. Ct. 1991) (pharmacists).  To determine whether such a fiduciary duty to safeguard confidential information exists, the court will look to whether "a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge."  Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 14 (1st Dep't 1998).  Nelson has not pleaded any facts suggesting that such a duty would be appropriate here – she did not plead facts suggesting that she "reposed confidence" in Publishers and "reasonably relied on" Publishers' "superior expertise or knowledge."  See

id.  Moreover, no case law suggests that a former employer owes such a fiduciary duty to an employee – the case law suggests exactly the opposite.  See Serow, 560 N.Y.S.2d at 576.  Holding that Publishers owed a fiduciary duty to its former employee would represent a substantial extension of New York law.

Accordingly, Publishers did not owe Nelson a fiduciary duty to safeguard her confidential information.  Absent such a duty, this claim is dismissed.  Moreover, as discussed above, Nelson has not plausibly alleged that any confidential information was disclosed to third parties, which further justifies dismissal of this claim.

Claim 4: Fraud

Publishers argues that Nelson's complaint fails to satisfy the elements of a claim for fraud.

A claim for fraud requires a misrepresentation of a material fact, intent to induce reliance, reliance, and pecuniary damages.  Meisel v. Grunberg, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009).

For the reasons discussed above with regard to the mail and wire fraud claims, Nelson fails to plead that Publishers made any actionable misstatements of material fact to her.  See, e.g., Braddock, 871 N.Y.S.2d at 72; Jacobs, 689 N.Y.S.2d at 468.

Therefore, Nelson's fraud claim is dismissed.

Claim 5: Negligent Misrepresentation and Constructive Fraud

Publishers claims that this claim should be dismissed because Nelson has not alleged a special relationship of trust and confidence.

A claim for negligent misrepresentation requires a "special relationship of trust or confidence, which creates a duty for one party to impart correct information to another, the information given was false, and there was reasonable reliance on the information given." Hudson River Club v. Consol. Edison Co. of N.Y., 712 N.Y.S.2d 104, 106 (1st Dep't 2000). A claim for constructive fraud requires "(1) a representation was made, (2) the representation dealt with a material fact, (3) the representation was false, (4) the representation was made with the intent to make the other party rely upon it, (5) the other party did, in fact, rely on the representation without knowledge of its falsity, (6) injury resulted and (7) the parties are in a fiduciary or confidential relationship." Del Vecchio v. Nassau Co., 499 N.Y.S.2d 765, 768 (2d Dep't 1986).

As discussed above, Nelson has not adequately pleaded that her former employer, Publishers, owed her a fiduciary duty. See Serow, 560 N.Y.S.2d at 576. Moreover, as discussed above in connection with the fraud claims, Publishers made no actionable representations to Nelson because all of the statements identified in the complaint constitute non-actionable opinions, puffery, or promises as to future facts. See Braddock, 871 N.Y.S.2d at 72; Jacobs, 689 N.Y.S.2d at 468.

Therefore, this claim is dismissed.

Claim 6: Civil Conspiracy to Commit Fraud

Publishers argues that Nelson's claim for civil conspiracy to commit fraud must be dismissed along with her fraud claim.

"New York does not recognize civil conspiracy to commit a tort as an independent cause of action. . . . Such a claim stands or falls with the underlying tort." Ward v. City of New York, 789 N.Y.S.2d 539, 541 (2d Dep't 2005) (citation omitted).

Here, as discussed above, the court has dismissed Nelson's fraud claim. It follows that her civil conspiracy to commit fraud claim is also dismissed. See id.

Claim 7: Aiding and Abetting Fraud

Publisher argues that the aiding and abetting fraud claim must be dismissed because Nelson has not pleaded that Publisher assisted a third party in committing fraud.

A claim for aiding and abetting fraud requires that the plaintiff plead "1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 883 N.Y.S.2d 486, 489 (1st Dep't 2009) (quotation marks omitted).

Here, Nelson's claim is that Publisher committed a fraud against her, not that a third party committed a fraud against her with Publisher's assistance. Nelson has not pleaded that any third party committed a

fraud against her, nor has she pleaded that Publishers substantially assisted in such fraud.

Therefore, this claim is dismissed.

Claim 8: Deceptive Acts and Trade Practices under NY General Obligations Law

Publisher argues that Nelson's claim under New York's General Business Law section 349 should be dismissed.

To plead a claim for breach of GBL section 349, Nelson must plead that Publisher committed "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  The complaint must allege "consumer-oriented" conduct. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).  The claim is available to a prospective consumer who is misled by false advertising concerning a product.  See Matter of Food Parade, Inc. v. Office of Consumer Affairs of Nassau, 7 N.Y.3d 568, 574 (2006).

Here, the complaint alleges that Publisher engaged in a scheme to defraud Nelson by making up fake paychecks in her name.  The complaint has nothing to do with Publishers misleadingly selling consumer products to Nelson or soliciting Nelson as a consumer of its products.

Therefore, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed in its

entirety.

Dated:  New York, New York
        March 7, 2012

_Thomas P. Griesa_

------------------------------
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/7/12